UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


Samuel L. P. Shepard,                                    Case No. 3:24-cv-1734

                    Plaintiff,

          v.                                             MEMORANDUM OPINION
                                                              AND ORDER

Ohio Northern University,

                    Defendant.


## I.  INTRODUCTION

Before me are the following fully-briefed motions: (1) Defendant Ohio Northern

University's motion to dismiss, (Doc. No. 12); (2) *pro se* Plaintiff Samuel L. P. Shepard's motion for

leave to file a Second Amended Complaint, (Doc. No. 17)[1]; and (3) Plaintiff's motion for leave to

file a sur-reply to Defendant's motion to dismiss.  (Doc. No. 18).[2]

---

[1] ONU filed its opposition brief to Shepard's motion to amend before the Court received and
electronically filed that motion on the public docket.  Therefore, the documents were not filed in the
typical order of: motion then opposition then reply.  To be clear, ONU's opposition brief to
Shepard's motion to amend is Document Number 16, and Shepard's reply is Document Number 19.

[2] Like Shepard's motion to amend, ONU filed its opposition brief to Shepard's motion for leave to
file a sur-reply before the Court received and electronically filed that motion on the public docket.
So again, to be clear, ONU's opposition brief to Shepard's motion for leave to file a sur-reply is
Document Number 15, and Shepard's reply is Document Number 20.

## II.    BACKGROUND

In the fall of 2022, Plaintiff Samuel L. P. Shepard began his second semester of law school at

Ohio Northern University Pettit College of Law ("ONU").  In advance of his midterm exams, he

requested an accommodation for a disability.  As part of this process, Shepard alleges he was

required to submit certain forms, through which he would give his consent to disclosure of,

> "any and all information submitted to and/or gathered by the Ohio Northern
> University College of Law to my initial or renewal request for examination
> accommodation(s)" to the, "College of Law's Examination Accommodations
> Committee, Appeals Committee, and faculty whose examinations will be taken with
> accommodations".  Further stating that should he refuse or withdraw consent, "... I
> understand that I will not be permitted any examination accommodations ..."[.]

(Doc. No. 10 at 4; Doc. No. 17-2 at 5).  Shepard alleges he objected to these forms but signed them

anyway to expedite the accommodations process.

In support of his request for accommodations, Shepard also submitted with his first

application for accommodations "his Individualized Educational Program (IEP) from his Local

Educational Agency (LEA) detailing the various accommodations provided, among them being

extended time and a half and the use of assistive technology."  (Doc. No. 10 at 5; Doc. No. 17-2 at

5).  But on September 28, 2022, Shepard's first request for accommodations was denied because

"the provided documentation was outdated, and . . . ' ... doesn't clearly establish a need for testing

accommodations ...'[.]"  (Doc. No. 10 at 5; Doc. No. 17-2 at 6).  This was two days prior to

Shepard's first midterm.

Following this first denial, Shepard alleges he met with Associate Dean Bryan Ward, who

instructed Shepard to seek updated documentation evincing Shepard's need for the requested

accommodation.  Shepard further asserts he followed this instruction and scheduled an appointment

with his general practitioner to secure "a further recommendation that the accommodations of

assistive technology within the classroom by form of laptop and extended time and a half is

appropriate."  (Doc. No. 10 at 6; Doc. No. 17-2 at 6).

Shepard does not explicitly allege he received this documentation and submitted it to ONU. But construing his *pro se* pleading liberally and in the light most favorable to him for purposes of this motion, Shepard implies he did secure the requested documentation and renewed his request for accommodations with the updated documentation by alleging he was notified "his accommodations were *again* denied . . . on October 6th, 2022."  (Doc. No. 10 at 6; Doc. No. 17-2 at 6) (emphasis added).  This was the date of Shepard's second midterm exam.

After receiving this second denial, Shepard requested a meeting with Dean Ward.  And he met with Dean Ward on this same date – October 6, 2022 – before his second midterm exam was set to begin.  During this meeting, Shepard asserts that Dean Ward informed him that "'the [College of Law's Examination Accommodations] Committee voted no on the time and a half, and I [Dean Ward] still want to explore the separate room accommodation.'"[3]  (Doc. No. 10 at 6; Doc. No. 17-2 at 7).  Dean Ward explained the Committee's decision to deny the requested accommodations and notified Shepard of his options: "(1) appeal the decision to an appeals committee[; or] (2) . . . take the form again to a medical professional, and request accommodations again, and [the College of Law's Examination Accommodations Committee] would do another determination."  (Doc. No. 10 at 7; Doc. No. 17-2 at 7-8).

To this, Shepard alleges he expressed his frustration:

> XXVII [30].  [Shepard] indicated that he was amidst examinations as the meeting was 'in the middle of mid-term day', and that this was the second examination that he was being refused accommodations.  Furthermore, this would be the second exam adversely affected by the stress of preparing, researching, and advocating for his accommodations.

---

[3] Shepard's pleadings reference two "committees" – the "College of Law's Examination Accommodations Committee" and the "Appeals Committee."  (Doc. No. 10 at 4; Doc. No. 17-2 at 5).  Because Shepard alleges Dean Ward advised him that one option available to Shepard following the October 6, 2022 denial was to "appeal the decision to an appeals committee," (Doc. No. 10 at 7; Doc. No. 17-2 at 7), it appears that the "Committee" to which Dean Ward was referring in this remark was the "College of Law's Examination Accommodations Committee."

> XXVIII [31]. Dean Ward indicated that he understood [Shepard]'s frustration, etc., and [Shepard] asserted that he felt that he had two choices, either fight [ONU] legally and to his detriment, or fail to pursue his accommodations.

(Doc. No. 10 at 7; Doc. No. 17-2 at 8).[4]

Ultimately, after further discussion, Shepard alleges, "Dean Ward indicated that should [he] still be interested in his accommodation for an alternate room, he should bring the assistive technology in for Dean Ward's review, to determine if a separate testing location would be appropriate." (Doc. No. 10 at 8; Doc. No. 17-2 at 8). Shepard asserts he "went to the Dean's office later that day for his examination under the pretense of having Dean Ward review his assistive technology for the approval of his accommodation of a separate testing location[, but] Dean Ward was unable to be located." (Doc. No. 10 at 8-9; Doc. No. 17-2 at 9).

Present in the office was the Dean's Office administrator Amber Schumacher. Shepard claims the following events then transpired:

> XXXV [37]. . . . [Shepard] asserted that he was there to see Dean Ward, that he was to review [the] assistive technology, and Ms. Schumacher indicated [Dean Ward] was not in the office. She then engaged with [Shepard] asking what about his assistive technology requires his alternate testing location, and when [Shepard] displayed his assistive technology, Ms. Schumacher indicated to a separate faculty personnel who is the IT faculty, that he should provide a substitute so the accommodation was not necessary. [Shepard] indicated that he was not going to argue his need for accommodation in the middle of the Dean's Office, and that their substitute would not be appropriate due to various reasons. After waiting for a period, it came time to start exam preparation and procedures for students with accommodations. Ms. Schumacher then told [Shepard] Dean Ward has yet to return to the office, and that either take his exam with his peers, without accommodations, or not to take the exam at all. As there were other students there awaiting to be brought to their alternate testing locations, this exchange occurred publicly before them, and other non-disabled students, law faculty, and others. Ms. Schumacher further stated that she only makes 13 dollars an hour, and that his accommodations are not her responsibility. Many faculty members peered into the office wondering what the altercation was, and other students had exchanged various expressions, where [Shepard] immediately left the Dean's Office without further exchange to locate

---

[4] The Roman numerals are the paragraphs numbers of the First Amended Complaint. (Doc. No. 10). The bracketed numbers are the paragraph numbers of the proposed Second Amended Complaint. (Doc. No. 17-2). The same applies for the remainder of this opinion.

Dean Rose or Dean Ward.  Ms. Schumacher then took the various students with alternate testing location accommodations to their assigned rooms.

XXXVI [38].  [Shepard] located Dean Rose as he was leaving the faculty restroom and indicated that he was in need of accommodations as a student with a disability, that there has been a dispute between the University and himself, and that he felt the University was retaliating, causing compensatory damages, and discriminating against him.  Dean Rose indicated to Ms. Schumacher that [Shepard]'s accommodations were to be provided in full for the current exam, and that Ms. Schumacher was to be responsible for escorting him to the proper testing location.  It was during this walk to the testing location that Ms. Schumacher further stated without enticement, in the open hallways of the University, that the Dean's decision was, "ridiculous, and that the Dean should not be given the platitudes of overriding the committee[']s decision for accommodations, and that [Shepard]'s accommodations were already previously denied by the committee on multiple occasions.["]

(Doc. No. 10 at 9-10; Doc. No. 17-2 at 9-10).

The following day, October 7, 2022, Shepard again met with Dean Ward, who informed Shepard he "would be provided with all the accommodations requested, and that it would be 'Guaranteed' moving forward."  (Doc. No. 10 at 10; Doc. No. 17-2 at 11).

For each of the following semesters of his law school career up to the date of filing this action, Shepard received the accommodations and was required to only submit one form – Form 103 – "which details the Class taken, midterm date and time, final date and time, and list of accommodations to be provided."  (Doc. No. 10 at 11; Doc. No. 17-2 at 12).  In the fall of 2024, administrative staff provided him with an additional request for Form 104, which contained the language he found objectionable.  But per Dean Ward, Shepard was not required to submit the form to receive his requested accommodations.

Aside from being sent Form 104 by administrative staff in the fall of 2024, Shepard does not allege any ADA violation occurred after October 6, 2022, when his requested accommodations were denied for a second time and he had the unfortunate exchange with Ms. Schumacher.  Nevertheless, more than two years after these events occurred, Shepard filed this action based on those 2022 events, on October 7, 2024.  (Doc. No. 1).

Now, Shepard alleges ONU violated the ADA by failing to provide his requested accommodations, "imposing unlawful eligibility criteria," retaliating against him for pursuing his requested accommodations, and disclosing his "confidential and protected educational information." (Doc. No. 17-2 at 13-24; *see also* Doc. No. 10 at 13-20).  He also alleges he was "personally injured" because of the conduct giving rise to these alleged violations.  (Doc. No. 10 at 20-22; Doc. No. 17-2 at 24-27).  ONU moves to dismiss each of these claims.  (Doc. No. 12).  In turn, Shepard moves for leave to file a Second Amended Complaint to cure deficiencies identified by ONU in its motion to dismiss briefing and add claims under Section 504 of the Rehabilitation Act.  (Doc. No. 17).

### III.  STANDARD

#### A.  MOTION TO DISMISS

Rule 12 provides for the dismissal of a lawsuit for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A court must accept as true all of the factual allegations contained in the complaint when ruling on a motion to dismiss.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007).  To survive a motion to dismiss under Rule 12(b)(6), "even though a complaint need not contain 'detailed' factual allegations, its 'factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.'"  *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal citations and quotation marks omitted).

The plaintiff must offer more than conclusory allegations or legal conclusions masquerading as factual allegations.  *Twombly*, 550 U.S. at 555 (The complaint must contain something more than "a formulaic recitation of the elements of a cause of action.").  A complaint must state sufficient facts which, when accepted as true, state a claim "that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that the plausibility standard "asks for more than a sheer possibility

that a defendant has acted unlawfully" and requires the complaint to allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct).

Courts must read Rule 12(b)(6) in conjunction with Rule 8(a)(2)'s requirement that a plaintiff need offer "only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson*, 551 U.S. at 93 (quoting *Twombly*, 550 U.S. at 555); *see also Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295-96 (6th Cir. 2008).

While pleadings submitted by *pro se* plaintiffs are "held to a less stringent pleading standard" than pleadings filed by an attorney, a *pro se* plaintiff still must plead sufficient "surrounding facts" to support a legal conclusion pled in the complaint. *Grinter v. Knight*, 532 F.3d 567, 577 (6th Cir. 2008) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

### B.   MOTION TO AMEND

Rule 15 provides a party may amend its pleadings once as a matter of course within 21 days of serving the pleading or, if a responsive pleading is required, 21 days after service of a responsive pleading. Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Head v. Jellico Hous. Auth.*, 870 F.2d 1117, 1123 (6th Cir. 1989). "Notice and substantial prejudice to the opposing party are

critical factors in determining whether an amendment should be granted." *Hageman v. Signal L. P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir. 1973).

Further, while "[t]he court should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), leave to amend should be denied as futile if the proposed amendment would not "withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 421 (6th Cir. 2000).

## IV.   ANALYSIS

Before considering the merits of the claims Shepard has brought in his First Amended Complaint and seeks to bring in his proposed Second Amended Complaint, I first consider ONU's argument that Shepard's motion for leave to file a Second Amended Complaint should be denied because "the proposed Second Amended Complaint would unfairly prejudice ONU since its Motion to Dismiss is fully briefed and ripe for adjudication."  (Doc. No. 16 at 1).

"To deny a motion to amend, a court must find 'at least some significant showing of prejudice to the opponent.'" *Ziegler v. Aukerman*, 512 F.3d 777, 786 (6th Cir. 2008) (quoting *Moore v. City of Paducah*, 790 F.2d 557, 562 (6th Cir. 1986)).  "'Delay that is neither intended to harass nor causes any ascertainable prejudice is not a permissible reason, in and of itself to disallow an amendment of a pleading.'" *Moore*, 790 F.2d at 561 (quoting *Tefft v. Seward*, 689 F.2d 637, 639 n.2 (6th Cir. 1982)).

To support its claim of "prejudice," ONU alleges "[g]ranting Plaintiff's Motion for Leave would result in a considerable waste of time, money, and resources for the parties and would unduly delay the resolution of this case . . . because it would force ONU to file yet another dispositive motion given the futility of Plaintiff's proposed amended pleading, requiring the parties to engage in yet another briefing schedule and await an adjudication."  (Doc. No. 16 at 4).

Contrary to ONU's assertion, it would not be required to file another dispositive motion to argue futility.  Instead, it could have and did argue futility in its opposition brief to Shepard's motion.  (Doc. No. 16 at 3-4).  Specifically, ONU argues filing a further amended complaint would be futile because the claims Shepard seeks to assert in his proposed Second Amended Complaint are the "same claims" as those asserted in the First Amended Complaint and therefore, those renewed claims must fail for the same reasons set forth in ONU's motion to dismiss.  (Doc. No. 16 at 3-4).  On this point, I agree with ONU, in part.

The claims Shepard seeks to assert in his Second Amended Complaint under the ADA and the Rehabilitation Act are effectively the same as those claims he previously asserted in his First Amended Complaint under the ADA and the Family Educational Rights and Privacy Act ("FERPA").  (*Compare* Doc. No. 10 *with* Doc. No. 17-2).  The facts Shepard sets forth in both complaints to support those claims are also virtually identical.

Because of the similarity between the two, I agree with ONU to the extent that if a claim in the Second Amended Complaint *would* not survive a motion to dismiss for the same reasons the similar claim stated in the First Amended Complaint *does* not survive ONU's motion to dismiss, the claim must be dismissed and leave to reassert that claim in a Second Amended Complaint must be denied.  For purposes of making such a determination, I will collectively consider all arguments made by both parties in the briefing on ONU's motion to dismiss and Shepard's motion for leave to file a Second Amended Complaint.

ONU argues Shepard's existing claims must be dismissed and leave to amend must be denied as futile because: (1) the damages Shepard seeks are not recoverable under the relevant statute;[5] and (2) the claims are time-barred.

_____

[5] ONU makes this argument for the first time in its reply in support of its motion to dismiss.  (Doc. No. 13).  This argument, if successful, is dispositive of a substantial portion of Shepard's claims. Therefore, rather than declining to consider it as procedurally improper, I grant Shepard's motion

### A.  MOTION FOR LEAVE TO FILE A SUR-REPLY AND PRAYER FOR RELIEF

ONU argues all of Shepard's claims under Title III of the ADA as stated in the First Amended Complaint must be dismissed because Shepard seeks to recover only monetary damages for these claims, which are not recoverable in a private action under Title III.[6]  As ONU correctly states, Title III of the ADA "only provide[s] injunctive relief as the sole remedy."  (Doc. No. 13 at 5-6) (citing *Powell v. Barlett Med. Clinic and Wellness Ctr.*, No. 2:20-cv-02118, 2021 WL 243194, at * 6 (S.D. Ohio Jan. 25, 2021) ("A private plaintiff suing under Title III of the ADA can obtain injective relief, but not compensatory damages.") (quoting *E.F. by Fry v. Napoleon Cmty. Schs.*, No. 12-15507, 2019 WL 4670738, at *8 (E.D. Mich. Sept. 25, 2019) (citing 42 U.S.C. § 12188)); *McNamara v. Ohio Bldg, Auth.*, 697 F.Supp.2d 820, 826 (N.D. Ohio 2010) ("Damages are not available in Title III suits") (citing *Smith v. Wal-Mart Stores, Inc.*, 167 F.3d 286, 293 (6th Cir.1999))).  *See also* 42 U.S.C. § 12188; 28 C.F.R. § 36.504.

---

for leave to file a sur-reply to the extent that I will consider Shepard's opposition to this argument made in his proposed sur-reply.  (Doc. No. 18-1 at 5-6).  I deny Shepard's motion for leave to file a sur-reply as it relates to every other argument made in his proposed sur-reply, which do not address a new legal issue or evidence but merely renew his previous arguments and point out sloppy errors made by ONU in its reply.  (Doc. Nos. 18 and 18-1).  *See, e.g.*, *Key v. Shelby Cnty.*, 551 F. App'x 262, 264-65 (6th Cir. 2014); *Geiger v. Pfizer, Inc.*, 271 F.R.D. 577, 580-81 (S.D. Ohio 2010).  Ultimately, "sur-replies... are highly disfavored," and whether to permit one is "left to the broad discretion of the trial court." *Carter v. Paschall Truck Lines, Inc.*, 364 F. Supp. 3d 732, 748 (W.D. Ky. 2019) (internal citations and quotation marks omitted).

[6] In his opposition brief to ONU's motion to dismiss, Shepard alleges "his case primarily falls under Title III, and IV of the ADA, as the primary issues of law under his complaint are 42 U.S.C. §§ 12181, 12182, 12188, 12203."  (Doc. No. 14-1 at 10-11).  In response to this, ONU references Shepard's "Title III claims (42 U.S.C. §§ 12181 and 12182), and Title IV claims (42 U.S.C. § 12203)" (Doc. No. 13 at 5).  But the ADA's prohibition on retaliation and coercion found in 42 U.S.C. § 12203 is not part of Title IV of the ADA, 47 U.S.C. § 225.  Instead, § 12203 is part of the "Miscellaneous Provisions" of the ADA.  To be clear, Shepard's ADA claims against ONU – a private university – are cognizable under only Title III of the ADA.  *See PGA Tour, Inc. v. Martin*, 532 U.S. 661, 672 n.18, 676-77, n.24 (2001) (citing 42 U.S.C. § 12181(7)(J)).  Therefore, the remedies and procedures available to him for violations of § 12203 are governed by § 12188.  *See* 42 U.S.C. § 12203(c).

Shepard implicitly concedes he cannot recover monetary damages for his claims under Title III of the ADA but argues his First Amended Complaint should not be dismissed in full because he "has asserted a claim for Personal Injury through [ONU's] violation, as detailed in Count V and the Prayer for Relief in the *Amend. Compl.,* which would entitle him to the relief requested in his complaint, and is a relief . . . which can be granted."  (Doc. No. 18-1 at 6).

Seemingly in an attempt to cure the identified deficiency through his proposed Second Amended Complaint, he adds prayers for injunctive and declaratory relief for violations of Title III of the ADA and Section 504 of the Rehabilitation Act.  (Doc. No. 17-2 at 27-28).  Still, he seeks compensatory and punitive damages under Count V for "emotional distress, social isolation, and hindered academic progress" that he alleges resulted from ONU's alleged violations of Title III of the ADA and Section 504 of the Rehabilitation Act.  (*Id.* at 24-27)  And, in the Prayer for Relief, Shepard requests "[c]ompensatory [d]amages . . . for the harm caused by [ONU's] intentional discrimination, pursuant to [his] claims for Personal Injury and Section 504 of the Rehabilitation Act."  (*Id.* at 28).  Shepard alleges:

> This includes [his] Economic Costs and Non Economic Costs including; Emotional Distress, Exacerbation of [his] pre-existing mental health, Pain and Suffering, Loss of Reputation, Loss of Privacy, Breach of Confidentiality, Increased Anxiety and Stress, Diminished academic experience, Social stigmatization and Psychological harm suffered due to [ONU's] misconduct.

(*Id.*).

ONU does not meaningfully respond to Shepard's argument regarding his "claim for Personal Injury . . . as detailed in Count V"[7] or the proposed amendment to the Prayer for Relief.

---

[7] Shepard raises this argument in his eighth point of his proposed sur-reply.  (Doc. No. 18-1 at 5-6).  But in its opposition to Shepard's motion for leave to file a sur-reply, ONU asserts "Plaintiff identifies six points to address in his surreply."  (Doc. No. 15 at 2).  I acknowledge that because ONU filed its opposition brief before the motion was filed with the Court, the copy presumably sent to ONU prior to that filing may have been incomplete.  But I do not assign fault to Shepard for any short-coming in his mailing.  By filing its hasty opposition brief before Shepard's *pro se* motion had been filed, ONU assumed the risk that the document eventually filed with the Court, if any,

Despite this, I conclude it appropriate to consider the merits of Shepard's argument and proposed amendment.

First, I conclude Shepard's proposed claim for emotional distress and punitive damages under Section 504 of the Rehabilitation Act would be futile because it is subject to *sua sponte* dismissal.

"[A] district court may, at any time, *sua sponte* dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999) (citing *Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974)).

Relevant here, this court lacks subject matter jurisdiction of Shepard's claims for emotional distress and punitive damages under Section 504 of the Rehabilitation Act "because its unsoundness so clearly results from the previous decisions of [the Supreme Court of the United States] as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy." *Hannis Distilling Co. v. City of Baltimore*, 216 U.S. 285, 288 (1910).  The Supreme Court has affirmatively held that neither emotional distress damages nor punitive damages are recoverable in a private action to enforce Section 504 of the Rehabilitation Act.  *See Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212 (2022) (emotional distress damages); *Barnes v. Gorman*, 536

---

would be different than that mailed to ONU.  This is one of the many pitfalls of *pro se* litigation. Moving forward, I urge ONU to wait until a document is actually filed with the Court before filing any response to it.  After all, I may consider only those motions actually filed with the Court.  To the extent there is a deadline concern, I will consider the "service" date to be the date the *pro se* submission is actually filed on the public docket.  *See* Local R. 7.1.  Here, there should have been no deadline concern as Shepard could not have served his motion for leave to file a sur-reply before December 16, 2024 – the date on which ONU's reply was filed, (Doc. No. 13) – and therefore, any opposition to that motion would have been due no earlier than December 30, 2024.  Nevertheless, ONU filed its opposition brief on December 23, 2024.  (Doc. No. 15).

U.S. 181 (2002) (punitive damages).  Therefore, Shepard cannot pursue such damages through this action.

Second, because Shepard's Count V personal injury claim of the First Amended Complaint seeks monetary damages for violations of Title III of the ADA, which are indisputably unavailable, ONU's motion to dismiss this claim must be granted.  Shepard offers no legal argument or authority that would permit me to conclude otherwise.  *See, e.g.*, *Al-Janabi v. Wayne State Univ.*, No. 20-12655, 2021 WL 1224205, at *3 (E.D. Mich. Apr. 1, 2021) ("Even though Plaintiff proceeds *pro se*, it is not the court's responsibility to decipher and formulate a winning legal argument for him.").

Similarly, because Shepard's Count V personal injury claim of the proposed Second Amended Complaint seeks monetary damages in the form of emotional, "non-economic damages" for violations of Title III of the ADA and Section 504 of the Rehabilitation Act, and because such damages are not recoverable in a private action under either statute, Shepard's motion for leave to assert such a claim in a Second Amended Complaint must be denied as futile.

Nevertheless, in light of Shepard's proposed requests for injunctive and declaratory relief, I reject ONU's argument that Shepard's request for only monetary damages in his First Amended Complaint requires dismissal of this action in full.  Instead, I will first consider ONU's second futility argument to determine whether amendment rather than outright dismissal is appropriate.

### B.   STATUTE OF LIMITATIONS

ONU argues all of Shepard's claims are subject to dismissal as time-barred.  Shepard disputes this assertion and suggests ONU's motion to dismiss based on the statute of limitations should be denied outright as an "inappropriate vehicle" to raise such a defense.  (Doc. No. 19 at 4, 6).  At the outset, I reject Shepard's second argument.

While it is true that, "[g]enerally, a motion under Rule 12(b)(6), which considers only the allegations in the complaint, is an 'inappropriate vehicle' for dismissing a claim based upon a statute

13

of limitations . . . , dismissal is warranted if 'the allegations in the complaint affirmatively show that the claim is time-barred.'" *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 2013) (quoting *Cataldo v. U.S. Steel Corp.,* 676 F.3d 542, 547 (6th Cir. 2012)).  In other words, "[l]ike other Rule 12(b)(6) motions to dismiss, a motion to dismiss on statute of limitations grounds should be granted when the statement of the claim affirmatively shows that the plaintiff can prove *no* set of facts that would entitle him to relief."  *New England Health Care Emps. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003) (emphasis in original) (internal quotation marks and further citation omitted).

Resolving this issue, I next consider whether the factual allegations contained in Shepard's pleadings affirmatively show his claims are time-barred.  The parties agree that a two-year statute of limitations applies to Shepard's claims.[8]  (*See* Doc. No. 12 at 5 and Doc. No. 14-1 at 6).  But they disagree about the date or dates on which those claims accrued.

Federal law governs the accrual date of Shepard's claims.  *See, e.g., Smith v. Kalamazoo Pub. Schs.*, 703 F. Supp. 3d 822, 830 (W.D. Mich. 2023).  And "[t]he general federal rule is that the statute of limitations begins to run when the reasonable person knows, or in the exercise of due diligence should have known, both his injury and the cause of that injury."  *Bishop v. Children's Ctr. for Dev. Enrichment*, 618 F.3d 533, 536 (6th Cir. 2010) (internal quotation and further citation omitted).  "This test is an objective one, and the Court determines what event should have alerted the typical lay

---

[8] In the First Amended Complaint, Shepard brought his claims under only the ADA and FERPA. (Doc. No. 10).  Through the Second Amended Complaint, Shepard seeks to bring those same claims under the ADA and the Rehabilitation Act.  (Doc. No. 17-2).  In the briefing, the parties do not separately address the Rehabilitation Act.  But "[b]ecause the ADA sets forth the same remedies, procedures, and rights as the Rehabilitation Act, see 42 U.S.C. § 12133, claims brought under both statutes may be analyzed together."  *Thompson v. Williamson Cnty., Tenn.*, 219 F.3d 555, 557 n.3 (6th Cir. 2000) (further citation omitted).  Relevant here, a two-year statute of limitations also applies to any claim Plaintiff seeks to bring under Section 504 of the Rehabilitation Act.  *See, e.g. McCormick v. Miami Univ.*, 693 F.3d 654, 664 (6th Cir. 2012).  Therefore, if a respective claim is time-barred under the ADA, that claim is also time-barred under the Rehabilitation Act.

person to protect his or her rights."  *Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2003) (internal quotation and further citation omitted).

ONU argues the event that should have alerted Shepard of his claims was the notice of the first denial of his request for accommodations, which occurred on September 28, 2022.  Shepard admits through his pleadings that this was the date on which he learned his accommodations were initially denied.  (Doc. No. 10 at 5; Doc. No. 17-2 at 6).  But he contends in his opposition brief that his causes of action accrued on not only September 28, 2022, but also on four other dates:

> (1) August 4th, 2022 where it is alleged Defendant imposed eligibility criteria and actions which constitute discriminatory practices prohibited under 42 U.S.C. § 12182(b)(2)(A)(i).  *Amended Complaint*, ¶¶ 17-18,62-67;
>
> (2) September 28th, 2022, where it is alleged the Plaintiff was initially denied their reasonable accommodations in violation of 42. U.S.C. § 12182(b)(1)(A).  *Id.*, ¶¶ 21,48-56;
>
> (3) October 6th, 2022, where the Plaintiff alleges he was subsequently denied his second request for reasonable accommodations accompanied by additional evidence through the physician's [further] (sic) recommendation in violation of 42 U.S.C. § 12182(b)(1)(A).  *Id.*, ¶¶ 23,48-56;
>
> (4) October 6th, 2022, where the Plaintiff alleges he was discriminated against through Ms. Schumacher's actions of coercion, intimidation, or interference in violation of 42 U.S.C. § 12203(b).  *Id.*, ¶¶ 35-37, 68-75; and
>
> (5) August 27th, 2024, where Defendant imposed eligibility criteria and actions which constitute discriminatory practices prohibited under 42 U.S.C. § 12182(b)(2)(A)(i).  *Id.*,  ¶¶ 6,44-45, 62-67.

(Doc. No. 14-1 at 6-7 (citing Doc. No. 10)) (formatting altered for clarity).

I will address each of these dates in the course of discussing each of Shepard's claims, which he refers to as "Counts" or "Issues" inconsistently throughout the First Amended and proposed Second Amended Complaints.  What matters for the purpose of this analysis is the number of the "Count" or "Issue," which remains the same for each respective cause of action in the First and proposed Second Amended Complaints.  For purposes of simplicity, I refer to them as "Counts."

### 1.      Count I

As Count I of Shepard's First Amended and proposed Second Amended Complaints, Shepard asserts a failure to accommodate claim.  (Doc. No. 10 at 13-14; Doc. No. 17-2 at 13-15). Based on the dates articulated by Shepard in his opposition brief, it appears he is seeking to assert two separate failure to accommodate claims through Count I: one based on the September 28, 2022 denial and another based on the October 6, 2022 denial.  (Doc. No. 14-1 at 7 (citing Doc. No. 10 at 13-14)).

ONU contends only one failure to accommodate claim may exist under the facts stated and argues that claim accrued on September 28, 2022 – the date on which Shepard first learned his requested accommodations were denied. ONU acknowledges that Shepard's requested accommodations were denied for a second time on October 6, 2022.  But it contends this second denial did not restart the statute of limitations because the request the Committee denied on this date was merely a "repeated request" or "request for reconsideration."  (Doc. No. 16 at 3-4).

Shepard disputes this characterization, arguing, "the denial which took place on October 6th, 2022 was not a simple review of the previous application or material [because he] had submitted supplemental documentation, which had fundamentally changed, altered, and distinguished [his] request for accommodations."  (Doc. No. 19 at 5).  Shepard alleges the sequence of events between the September 28, 2022 denial and October 6, 2022 denial was "not an interactive process of determining applicable accommodations based on the committee's decision, but rather [the October 6, 2022 denial was] a clear and simple formal denial of accommodations, which . . . bring rise to an individual cause of action on October[] 6th[,] 2022."  (*Id.*).

"A denial of a request for accommodation is a discrete act that starts the clock on the statute of limitations."  *Hill v. Ohio Dep't of Mental Health & Addiction Servs.*, No. 2:21-CV-4141, 2024 WL 495525, at *9 (S.D. Ohio Feb. 8, 2024) (citing *Horton v. Potter*, 369 F.3d 906, 910 (6th Cir. 2004)).

While an individual may renew a request for accommodations, the "reiteration of [an] earlier denial" does not restart the statute of limitations. *Hall v. The Scotts Co.*, 211 F. App'x 361, 363 (6th Cir. 2006). And "[f]ailure to remedy a prior act of discrimination does not constitute a new act of discrimination for the purpose of determining whether a claim is time barred." *Everett v. Cobb Cnty. Sch. Dist.*, 138 F.3d 1407, 1410 (11th Cir. 1998).

Shepard's First Amended and proposed Second Amended Complaints affirmatively show his requested accommodations were denied on September 28, 2022. (Doc. No. 10 at 5; Doc. No. 17-2 at 6). This decision to deny Shepard's requested accommodations was the discriminatory act that started the clock on Shepard's failure to accommodate claim.

Much like "entertaining a grievance complaining of the tenure decision does not suggest that the earlier decision was in any respect tentative," *Delaware State College v. Ricks*, 449 U.S. 250, 261 (1980), entertaining Shepard's supplementary materials in support of his requested accommodations did not suggest the Committee's September 28, 2022 decision to deny his requested accommodations was in any way tentative. Had the Committee granted Shepard's requested accommodations in light of the supplemental materials, it would have been remedying its prior allegedly discriminatory act. By denying Shepard's requested accommodations again on October 6, 2022, the Committee merely reiterated its previous denial – amounting to a failure to remedy its prior alleged discriminatory act and not a new discriminatory act.

Simply put, Shepard sustained no "new" injury when the Committee again denied his requested accommodations on October 6, 2022. Instead, he remained in the same "injured" position he had been in every day since the Committee first denied his requested accommodations on September 28, 2022.

September 28, 2022 was the date Shepard knew of the injury that forms the basis of his failure to accommodate claim and thus, the day the two-year statute of limitations on this claim

17

began to run.  Because he did not bring this claim until October 7, 2024, it is time-barred. Therefore, I grant ONU's motion to dismiss this claim stated as Count I, and deny as futile Shepard's motion for leave to file a Second Amended Complaint that includes his proposed Count I.

      **2.**      **Count II**

As Count II of Shepard's First Amended and proposed Second Amended Complaints, Shepard asserts a claim of imposition of unlawful eligibility criteria.  (Doc. No. 10 at 14-16; Doc. No. 17-2 at 15-18).  Like his failure to accommodate, based on the dates articulated by Shepard in his opposition brief, it appears he is seeking to assert two separate claims of imposition of unlawful eligibility criteria through Count II: one based on an event that happened on August 4, 2022[9] and another based on event that happened on August 27, 2024.  (Doc. No. 14-1 at 6-7 (citing Doc. No. 10 at 14-16)).

As grounds for this claim, Shepard alleges ONU violated the ADA "by requiring [him] to sign a waiver of his rights under FERPA as a condition for receiving accommodations."  (Doc. No. 10 at 15; Doc. No. 17-2 at 17).  The factual allegations set forth in both the First Amended and proposed Second Amended Complaints that arguably support this claim are as follows:

> XVII [19].  At the conclusion of the Summer Starter program, Plaintiff was directed by the Dean's Office administrator Amber Schumacher, who provided Plaintiff with various forms described as 'Forms 101-105'.  Among which demanded the express consent and disclosure of, "any and all information submitted to and/or gathered by the Ohio Northern University College of Law to my initial or renewal request for examination accommodation(s)" to the, "College of Law's Examination Accommodations Committee, Appeals Committee, and faculty whose examinations will be taken with Accommodations".  Further stating that should he refuse or withdraw consent, " .. .I understand that I will not be permitted any examination accommodations ..."

> XVIII [20].  Plaintiff had reached out to Dean Charlie Rose, indicating that the forms were concerning, and that the required release of protected health information

---

[9] This date does not appear in Sheppard's First or Second Amended Complaints.  Instead, it is found only in his opposition brief.  (Doc. No. 14-1 at 6).  Therefore, it is not entitled to the presumption of truth.  Nevertheless, for the reasons discussed below, this shortcoming is immaterial as any claim based on these events is plainly time-barred.

to the degree under the policy was not consistent with other public entities such as Universities or the Law School Admission Council examinations (LSAC).

. . .

XX [22].  [Nevertheless,] Plaintiff signed and filled out Forms 101-105 under protest as evidenced by his correspondence with Dean Rose, in the hopes that it would expedite his application, and under the expectation that should he not, his accommodations would not be provided in accordance with the language noted in section XIV [19] of this complaint.

XXI [23].  [On] September 28, 2022, Defendant denied Plaintiff's accommodations request[.]

. . .

XXXVII [39].  Plaintiff subsequently met with Dean Ward on October 7th, 2022[.] [At this meeting,] Dean Ward . . . stated that Plaintiff would be provided with all the accommodations requested, and that it would be "Guaranteed" moving forward.

. . .

XLII [44]. Plaintiff subsequently had only provided Form 103 each following semester, which details the Class taken, midterm date and time, final date and time, and list of accommodations to be provided.  Plaintiff has routinely provided this form each semester since the fall 2022 semester.

. . .

XLIV [46].  At the Fall 2024 Semester, administrative faculty reached out again requiring Form 103, and included an additional request of Form 104 which had not been completed nor requested since 2022.  Plaintiff indicated to the administrative faculty that he would like to meet with Dean Ward again, to discuss his concerns with again being demanded to disclose/waive his rights to privacy to his educational and medical information yet again[.]

XLV [47].  At this meeting Dean Ward indicated that since the form had not been requested since 2022, he would not require it again, and that Plaintiff would be able to still receive his previous accommodations granted.

(Doc. No. 10 at 4-5, 10-12; Doc. No. 17-2 at 5-6, 10-13).

ONU argues any claim that it imposed unlawful eligibility criteria is time-barred because it "never required him to submit any documentation Plaintiff perceived as a violation of his privacy rights" after "guaranteeing" his requested accommodation on October 7, 2022.  (Doc. No. 16 at 3;

19

Doc. No. 12 at 8; Doc. No. 13 at 4).  Specifically, ONU suggests Shepard suffered no injury in any subsequent semester because he "was provided with the accommodations he requested[,] and he was not required to submit Form 104 which he believed to be a violation of his privacy rights."  (Doc. No. 16 at 4).

Shepard does not dispute that for every semester after the fall of 2022, including the fall 2024 semester, he received his requested accommodations without submitting Form 104.  That is, taking as true that the administrative faculty included Form 104 in the August 2024 request, the factual allegations in the First Amended and proposed Second Amended Complaints affirmatively show Shepard was not required to sign Form 104 as a condition of receiving his requested accommodations for the fall 2024 semester.  Put another way, Form 104 – or waiving his FERPA rights – was not an "eligibility criteria" imposed on Shepard in August 2024.  *See* 42 U.S.C. § 12182(b)(2)(A)(i).  Therefore, Shepard's claim based on the August 2024 event must fail.

It follows that Shepard's claim of imposition of unlawful eligibility criteria based on ONU's alleged requirement that he submit Form 104 as part of his application to receive his requested accommodations in the fall of 2022 must also fail.

Even construing Shepard's First Amended and proposed Second Amended Complaints liberally, both affirmatively show this allegedly unlawful "eligibility criteria" was imposed on Shepard before his request for accommodations was denied on September 28, 2022.  Therefore, the two-year statute of limitations for this claim expired no later than September 28, 2024, and the claim is time-barred.

Shepard suggests this claim might be saved by the "continuing violations" doctrine based on an alleged policy of discrimination.  Construing Shepard's First Amended and proposed Second Amended Complaints liberally, this alleged discriminatory "policy" was ONU's allegedly policy of requiring students seeking accommodations to submit Form 104 that still existed in August 2024.

(*See* Doc. No. 10 at 12-13; Doc. No. 17-2 at 13). But even if ONU had such a policy as of that date, and even if requiring Form 104 constituted a violation of anti-discrimination law, the existence of this policy could not revive Shepard's claim because he was not subjected to that policy during the applicable limitations period. *See, e.g., Pittman v. Spectrum Health Sys.*, 612 F. App'x 810, 813 (6th Cir. 2015) ("In addition to alleging a longstanding and demonstrable policy of discrimination, however, parties who seek to invoke the continuing-violations doctrine also must allege they have suffered a specific discriminatory act within the applicable limitations period.").

Because Shepard was not required to submit Form 104 to receive *his* requested accommodations at any point in the two years before he filed this action on October 7, 2024, he cannot invoke the "continuing violations" doctrine to save his unlawful eligibility criteria claim. This claim, stated as Count II, is time-barred. Therefore, I grant ONU's motion to dismiss the claim stated as Count II, and deny as futile Shepard's motion for leave to file a Second Amended Complaint that includes his proposed Count II.

### 3. Counts III and IV

As Count III of the First Amended and proposed Second Amended Complaints, Shepard alleges ONU violated the ADA's prohibition against retaliation, coercion, intimidation, and interference, 42 U.S.C. § 12203, by:

> (a) Publicly disclosing information relating to his disability and accommodations requests in front of faculty, peers, public persons, and other University personnel. (b) Refusing to provide accommodations and subjecting Plaintiff to unnecessary public humiliation. (c) Imposing retaliatory measures by requiring Plaintiff to waive his privacy rights under FERPA.

(Doc. No. 10 at 17; Doc. No. 17-2 at 20).

As discussed above, ONU's decision to deny Shepard's requested accommodations occurred on September 28, 2022. And its decision not to change its mind on October 6, 2022 is not a separate "refusal" to provide accommodations. Therefore, any retaliation, coercion, intimidation,

and interference claim based on ONU's "refus[al] to provide accommodations" accrued on September 28, 2022, and is also time-barred.  (Doc. No. 10 at 17; Doc. No. 17-2 at 20).

Likewise, the only time Shepard was required to submit Form 104 occurred prior to September 28, 2022.  Therefore, any retaliation, coercion, intimidation, and interference based on "requiring Plaintiff to waive his privacy rights under FERPA" accrued no later than September 28, 2022, and is also time-barred.  (Doc. No. 10 at 17; Doc. No. 17-2 at 20).

Remaining are Shepard's assertions that ONU violated the ADA's prohibition against retaliation, coercion, intimidation, and interference, 42 U.S.C. § 12203, by "[p]ublicly disclosing information relating to his disability and accommodations requests in front of faculty, peers, public persons, and other University personnel . . . and subjecting [him] to unnecessary public humiliation." (Doc. No. 10 at 17; Doc. No. 17-2 at 20).

These remaining allegations appear to be the same as those giving rise to Count IV of the First Amended and proposed Second Amended Complaints.  In the First Amended Complaint, Shepard labeled this claim: "Violation of FERPA and ADA Confidentiality Requirements through Unlawful Discrimination and Unauthorized Disclosure of Confidential Information."  (Doc. No. 10 at 18).  Subsequently, in the proposed Second Amended Complaint, Shepard labeled this claim: "Violation of ADA, Section 504 and 34 C.F.R. Part 104 Through the Discriminatory Disclosure of Confidential and Protected Educational Information."  (Doc. No. 17-2 at 21).  Despite the name change, the claim remained the same in principle with both alleging:

> [ONU] unlawfully disclosed [his] confidential medical and educational information to faculty members, peers, and other University staff without [his] consent or authorization.  This disclosure was unnecessary for providing accommodations and violated [his] confidentiality rights under the ADA.

(Doc. No. 10 at 19; *see also* Doc. No. 17-2 at 22).[10]

---

[10] Confusingly, Shepard added "and FERPA" to the end of the second sentence in the proposed Second Amended Complaint despite dropping the "Violation of FERPA" from the name of the

Construing Shepard's First Amended and proposed Second Amended Complaints liberally, Shepard arguably alleges that disclosure of otherwise confidential information pursuant to his signed Form 104 in the fall of 2022 was itself a violation. But disclosure of this information pursuant to Shepard's signed Form 104 would have been the effect of an alleged discriminatory act and not itself a violation. As discussed above, the statute of limitations on any claim related to the disclosure of information pursuant to Shepard's signed Form 104 would have started running prior to September 28, 2022. *See Del. State Coll.*, 449 U.S. at 258 (1980) ("The proper focus is upon the time of the *discriminatory acts*, not upon the time at which the *consequences* of the acts became most painful. . . . The emphasis is not upon the effects of earlier employment decisions; rather, it is upon whether any present *violation* exists.") (cleaned up but emphasis in original). Therefore, to the extent Shepard alleges any cause of action based on the disclosure of information with his consent via Form 104 in the fall of 2022, that claim must be dismissed.

Aside from this possibility, the only factual allegations related to disclosure of confidential information relates to the altercation that occurred between Shepard and Ms. Schumacher on October 6, 2022. ONU does not acknowledge this incident at any point in the briefing. Specifically, it does not argue that a claim based on this event is time-barred.[11]

---

claim. I quote the language of the First Amended Complaint that does not include "FERPA" because "there is no question that FERPA's nondisclosure provisions fail to confer enforceable rights." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 287 (2002). Contrary to Shepard's suggestions regarding an intent of Congress to grant individuals like himself "confidentiality rights under . . . FERPA," (Doc. No. 17-2 at 22), the Supreme Court has held FERPA's non-disclosure "provisions entirely lack the sort of 'rights-creating' language critical to showing the requisite congressional intent to create new rights." *Gonzaga Univ.*, 536 U.S. at 287.

[11] Even if any claim based on this altercation is found to be timely, it would not act as an anchor claim to revive any of Shepard's claims based on events that occurred prior to that altercation under the "continuing violations" doctrine. The altercation with Ms. Schumacher was a discrete act that does not act to "pull in" the time-barred discrete discriminatory acts, even if they are tangentially related. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.").

Even so, because Shepard sought monetary damages for alleged violations of Title III of the ADA based on this event through his First Amended Complaint, those claims are subject to dismissal for the reasons discussed above.  But because Shepard seeks to cure this deficiency and pursue injunctive and declaratory relief instead, I conclude Shepard should be permitted to amend these claims.  To be clear, with this, I grant Shepard's motion for leave to file a Second Amended Complaint that may state only the following claims based only on the October 6, 2022 altercation: (1) retaliation, coercion, intimidation, or interference under Title III of the ADA, Section 504 of the Rehabilitation Act, or both; and (2) discrimination under Title III of the ADA, Section 504 of the Rehabilitation Act, or both.[12]  Further, Shepard may only seek the relief available to plaintiffs pursuing a private action under these statutes.

## V.    CONCLUSION

For the foregoing reasons, I grant in part and deny in part ONU's motion to dismiss, (Doc. No. 12), and Shepard's motion for leave to file a Second Amended Complaint.  (Doc. No. 17).

All of Shepard's claims based on events other than the October 6, 2022 altercation between he and Ms. Schumacher must be dismissed as time-barred.  Further, Shepard's claims for non-economic, emotional distress damages must be dismissed because the relief sought through this claim cannot be awarded in a private cause of action under Titles III and IV of the ADA or Section 504 of the Rehabilitation Act.

Should Shepard seek to file a Second Amended Complaint limited to the claims and relief I described above, he shall do so by September 24, 2025.  If no Second Amended Complaint is filed

---

[12] To the extent Shepard seeks to renew any argument regarding his alleged rights under FERPA moving forward in this litigation, I remind him that "FERPA's nondisclosure provisions further speak only in terms of institutional policy and practice, not individual instances of disclosure." *Gonzaga Univ.*, 536 U.S. at 288.  Rather than FERPA, I urge him to focus on the statutes under which his claims are brought: Title III of the ADA and Section 504 of the Rehabilitation Act.

by this date, I will infer that he does not intend to proceed with this action and will dismiss it for failure to cure the damages issue, which otherwise justifies dismissal of Shepard's existing Title III claims based on the October 6, 2022 altercation.

   If Shepard timely files his Second Amended Complaint, evincing his intent to proceed with this action, ONU's response to the Second Amended Complaint shall then be filed on or before October 15, 2025.  Should ONU file a Rule 12 motion in response, Shepard must file any opposition by November 29, 2025.  Any reply must then be filed no later than December 10, 2025.

   So Ordered.

                                    s/ Jeffrey J. Helmick
                                    United States District Judge